## THE HISKO.

### ALMIRANTE S. S. CORPORATION v. UNITED STATES.

### No. 67.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1931.

George Z. Medalie, U. S. Atty., of New York City (Horace M. Gray, of New York City, of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Robert S. Erskine and Cletus Keating, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

This suit was brought under a special act of Congress (44 Stat. 1793), and, on appeal from the interlocutory decree, this court held the United States solely at fault for the collision. Almirante Steamship Corporation v. United States (C. C. A.) 34 F.(2d) 123. Thereafter the cause was referred to a commissioner to ascertain the libelant's damages, and voluminous testimony was taken and was considered by him in an extensive report. Exceptions thereto by the respondent having been overruled, the District Court entered final decree. The present appeal questions only the amount of the award for the value of the vessel at the time of her loss.

The Almirante had been constructed in Belfast, Ireland, in 1908, at an original cost of $575,595.25. She was a steel vessel of 5,010 tons gross, built to engage in the fruit trade, and equipped with refrigeration for carrying bananas and with accommodations for a limited number of passengers. At the time of her loss she was registered under the American flag, and had been requisitioned by the government; the voyage upon which she was sunk being the last she was to make for her owner before going under the requisition. Due to war conditions there was a great demand for vessels in September, 1918, but no open market and no comparable sales to serve as proof of the Almirante's market value. Consequently, both parties resorted to expert testimony as to reproduction cost as of the date of valuation, opinions as to value if the vessel could have been sold free of governmental restrictions, and a comparison between the value of the Almirante and that of the Proteus as allowed by this court and affirmed by the Supreme Court. Standard Oil Co. v. So. Pacific Co., 268 U. S. 146, 45 S. Ct. 465, 69 L. Ed. 890, affirming The Cushing (C. C. A.) 292 F. 560. After considering all the evidence, the commissioner found the value of the Almirante to be $1,750,000. When the commissioner's report came before the District Court, additional evidence was stipulated as to insurance carried by the Almirante and the value at which she was carried on the books of her owner. The District Court confirmed the report of the commissioner.

The amount awarded as the value of the Almirante is about $1,000 less than the estimate of reproduction cost, depreciated at 2½ per cent. per annum applied progressively, as testified by libelant's witness Mr. Schulze. His testimony was found the most competent of any of the witnesses on this subject, chiefly because his figures were based upon an estimate prepared by him in 1908 for the Fore River Shipbuilding Company for bidding on the construction of the Heredia, a vessel almost a duplicate of the Almirante. To the quantities of materials thus ascertained the witness applied 1918 prices. Criticism seems to be made of the court's adoption of Mr. Schulze's estimate of reproduction cost because it was higher than the estimates of libelant's other witnesses; but this in itself is no ground for valid objection, because, for adequate reasons, his estimate was considered the most accurate and reliable.

A more serious complaint is that it was based upon American costs, whereas the vessel sought to be valued was British built. Concededly the principles to be applied in determining the libelant's loss are those stated in the Proteus litigation to which reference has already been made. Reconstruction cost less depreciation for age is not an absolute measure of a vessel's value, but only one of the relevant facts, all of which must be considered in arriving at a fair judgment of value; nevertheless, under such conditions as were shown to exist in the Proteus Case and in the case at bar, reconstruction cost less proper depreciation may be deemed a reliable indication of the minimum value. The libelant is entitled to be restored to the position it would have been in had no tort been committed; that is, to get the value on September 6, 1918, of a British built Almirante flying an American flag and going under requisition when she reached port. If she was less valuable because British built, then reconstruction costs should be estimated on British rather than American prices; but the evidence shows that, under the abnormal conditions of September, 1918, there was a demand for cargo vessels, regardless of where they were built, which gave them a value, if they could have been sold, greater than their reproduction cost in an American yard. Mr. Barnett, the respondent's expert, testified that, if the Almirante could have been sold free of all restrictions, she would have brought "$2,000,000, and more." Witnesses for the libelant gave similar testimony; the average of all such estimates being more than $1,880,000. Of course she could not have been sold free of restrictions, and such testimony does not prove her market value subject to the restrictions she was under; nevertheless it does tend to show that the experts thought her worth more than the cost of her reconstruction in an American yard. This was further corroborated by Mr. Barnett's testimony that "construction costs in an abnormal market are usually lower than the sales price of ready tonnage at that same time in that same market."

Moreover, the commissioner and the District Court did not find trustworthy evidence that the British prices would have been lower than American. It is true that Mr. Ross thought that British costs were one-third lower than ours during the war period. Mr. Schulze, on the other hand, expressed the view that in 1918 British costs would exceed American. Mr. Barnett said that American costs were about 15 per cent. higher at that time, but when he testified he knew of a letter from Workman Clark, Limited, which

stated that it would have cost £550,000 to build the Almirante in a British yard in September, 1918.

After examining the record, we conclude that the American reconstruction cost was competent evidence to be considered in determining the Almirante's value and that the amount awarded can be supported on all the evidence presented.

██ The appellee has assigned error to the failure of the decree to allow interest. We are unable to accept the argument that an implication of authority to pay interest on the judgment is to be found in the prohibition that "no interest shall be paid on any claim." 44 Stat. part 3, p. 1793. Boston Sand & Gravel Co. v. United States, 278 U. S. 41, 49 S. Ct. 52, 73 L. Ed. 170, is controlling.

Decree affirmed.